# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

RACHEL BERNSTEIN, JESSICA BURCIAGA,
EVA PEPAJ, JENNIFER ZHARINOVA,
SANDRA VALENCIA, VIDA GUERRA,
IRINA VORONINA, CORA SKINNER,
SARA UNDERWOOD, TAL BERKOVICH, and
MALU LAND,

 Plaintiffs,         Case No.: 3:16-cv-00073-MCR-EMT

v.

R&B AMUSEMENTS, INC. d/b/a NIGHTOWN
CLUB and ROBERT BONEZZI,

 Defendants.
_____/

## DEFENDANT'S MOTION TO SEVER PLAINTIFFS' CLAIMS AND MEMORANDUM OF LAW IN SUPPORT

Defendant R&B Amusements, Inc. d/b/a Nightown ("Nightown") moves this Court, pursuant to Federal Rule of Civil Procedure 21, to determine that there has been improper joinder of Plaintiffs in the above-referenced action, to sever the claims of each individual Plaintiff in this action into separate actions, and to require each Plaintiff to file his or her own individual complaint and in support states as follows:

### INTRODUCTION

1. Plaintiffs are attempting to join eleven (11) wholly separate actions into one (1) single action. Each Plaintiff brings eleven (11) causes of action

against Nightown, sounding in fraud, theft, unfair trade practices, misappropriation, and defamation, among others.[1] Plaintiffs' claims are based on various alleged acts by Nightown related to eleven (11) separate images (the "Images"). Nightown brings the present Motion because Plaintiffs' improper joinder violates established principles of federal and Florida law governing permissive joinder and severance. Specifically, Plaintiffs' disparate actions raise a multitude of entirely separate and distinct factual issues that preclude them from being properly joined together in one (1) lawsuit. Therefore, Nightown requests that this Court sever the claims of each individual Plaintiff in the above-referenced action and require each Plaintiff to file her own individual complaint.

## FACTUAL BACKGROUND

2.  Nightown was a locally owned and operated nightclub located in Destin, Florida. It is no longer in business.

3.  Plaintiffs are eleven (11) individuals who claim to be professional models.

4.  The instant action involves eleven (11) distinct causes of action brought by each of the eleven (11) professional models against Nightown.

---

[1] In their Complaint, Plaintiffs have each brought the following eleven (11) causes of action against Nightown: (1) Violation of the Lanham Act; (2) Unauthorized Publication of Name or Likeness in Violation of §540.08, Florida Statutes; (3) Violation of Common Law Right of Privacy; (4) Violation of Florida's Unfair and Deceptive Trade Practices Act; (5) Civil Theft; (6) Unjust Enrichment; (7) Unlawful Conversion; (8) Unfair Competition; (9) Fraudulent Misrepresentation; (10) Negligence; and (11) *Respondeat Superior*.

5. Nightown first became aware of Plaintiffs' allegations when it received a letter from Plaintiffs' counsel dated July 23, 2015 (the "July 23rd Letter"), titled "Notice of Claim of Civil Theft," which accused Nightown of "stealing" nine (9) separate Images belonging to eight of the eleven (11) Plaintiffs. (ECF No. 1-1).

6. The July 23rd Letter referenced a letter allegedly sent to Nightown on May 21, 2015 (the "May 21st Letter"), which had not been received by Nightown. Nightown had no knowledge of this letter until it received the July 23rd Letter and requested a copy from Plaintiffs' counsel. Notably, the May 21st Letter identified only five (5) of the eleven (11) current Plaintiffs.

7. The May 21st Letter and July 23rd Letter created uncertainty with respect to ownership of the Images. Specifically, it is Nightown's position that it has a right to use the Images and Nightown is unaware of what rights in the Images, if any, are held by each of the eleven (11) separate Plaintiffs.

8. On February 24, 2016, Plaintiffs filed the instant action against Nightown. Once Nightown was served, it timely answered the Complaint. (ECF No. 7). Therein, Nightown noted that it would be filing this Motion to Sever. (ECF No. 7, ¶ 15).

9. Each Plaintiff claims to be damaged by Nightown's use of one (1), distinct Image, personal to herself. Upon information and belief, these Images

were taken at different times, by different photographers, for different purposes, and each Plaintiff entered into separate, distinct agreements with respect to how each Image would be used and what rights each Plaintiff would retain.

10.   These separate fact issues will be crucial to the determination of each individual Plaintiff's causes of action.  As set forth more fully below, trying Plaintiffs' actions together in a single action will not only violate federal and Florida law regarding permissive joinder, but will also be inefficient and substantially prejudicial to Defendant, Nightown.

## PROCEDURAL BACKGROUND

11.   Eight (8) of these eleven (11) Plaintiffs initially tried filing a single suit against Nightown in state court in Okaloosa County, Florida.  However, on November 25, 2015, Nightown filed a Motion to Sever in the state case, and it was granted by Circuit Court Judge John T. Brown.  As a result, Judge Brown entered an Order striking eight (8) of these Plaintiffs from the state court lawsuit, leaving Cielo Jean Gibson as the only plaintiff in that case.[2]  Counsel for the state court plaintiffs was afforded the opportunity to file separate lawsuits on behalf of the other eight (8) plaintiffs, but instead, Counsel has elected to file the instant lawsuit in front of the Northern District.  The same eight (8) plaintiffs are named herein, in addition to three (3) others.  It is clear that Plaintiffs have filed the instant lawsuit

---

[2] Case No.: 2015-CA-003358.

Case No.:  3:16-cv-00073-MCR-EMT

to avoid having to file an additional eight (8) to ten (10) lawsuits in state court. However, in severing the plaintiffs, the conclusion arrived at by Judge Brown was the correct one, and one which Nightown requests this Court reach as well.

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO SEVER

12. Federal Rule of Civil Procedure 21 states that "the court may sever any claim against a party." Fed. R. Civ. P. 21.  "Courts are given discretion to decide the scope of the civil action and to make such orders as will prevent delay or prejudice." *E-Z Pack Mfg., LLC v. RDK Truck Sales & Serv.*, 2011 U.S. Dist. Lexis 97274, 2011 WL 4343790 (M.D. Fla. August 11, 2011); quoting *Acciard v. Whitney*, 2008 U.S. Dist. Lexis 98130, 2008 WL 5120820, at *1 (M.D. Fla. Dec.4, 2008) (internal citations and quotations omitted).  "When exercising its discretion a court may consider the following factors: whether the claims arise from the same transaction or occurrence, whether they present some common question of law or fact, whether severance would facilitate settlement or judicial economy, and the relative prejudice to each side if the motion is granted or denied." *E-Z Pack Mfg.* at 32; See also *Fisher v. Ciba Specialty Chemicals Corp.*, 245 F.R.D. 539, 541 (S.D. Ala. 2007).

13. When multiple Plaintiffs bring causes of action that will require numerous individual factual determinations, courts will generally sever the actions. *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 672, 676 (S.D. Fla.

2011) (holding that severance was warranted because permissive joinder would create "scores of mini-trials involving different evidence and testimony" and "unmanageable logistical burdens").

14. The claims of each individual Plaintiff in this action must be severed both to promote efficient resolution of the claims and to prevent prejudice to Nightown.

15. Plaintiffs should be prohibited from joining their individual sets of causes of action together in one action for the following reasons: (1) a determination of liability with respect to each of the eleven (11) Plaintiffs' claims will require a highly individualized inquiry; (2) a determination of each individual Plaintiff's damages will require a highly individualized inquiry; (3) severance of Plaintiffs' actions serves the interests of judicial economy; and (4) allowing Plaintiffs' actions to proceed together will substantially prejudice Defendant Nightown.

16. Plaintiffs' Complaint oversimplifies the issues to give the false impression that the Plaintiffs' actions are similar. However, Plaintiffs cannot point to a single truly common fact issue shared between their individual actions. Rather, each of the eleven (11) Plaintiffs' separate sets of causes of action will require a highly individualized inquiry and involve hundreds of individual fact issues unique to each Plaintiff.

17. Plaintiffs' individual claims in this case will center around the circumstances under which each individual Image was created and the extent to which each Plaintiff owns any rights to that Image.

18. It has become standard in the modeling industry for professional photographers to require commercial models to sign waivers and releases of their rights to the images he or she will capture during a photo shoot.  Pursuant to generally accepted industry standards, models agree to release all rights to reproduce, alter, sell, or otherwise distribute photos and to hold the photographer and anyone acting under his or her permission harmless for any publication of the photos.

19. Commercial models routinely sign these broad and unequivocal releases, which are generally enforced by courts.  This is true even where the release gives a photographer, and anyone acting with his or her permission, unfettered use of a photo. *See Cepeda v. Swift & Co.,* 415 F.2d 1205, 1207-1208 (8th Cir. 1969) (The court declined to rewrite plaintiff's clear, unequivocal consent); *Delaney v. Newsday, Inc.,* 18 Media L. Rep. (BNA) 1885, 1886, 1991 WL 95125 (N.Y. Sup 1991) (The court enforced a broad release given a photographer which applied to any person for whom the photographer "might be acting, including any firm publishing and or distributing the finished product" as to a subsequent use in newspaper advertising).

20. Upon information and belief, each of the individual Images at issue were taken by different photographers, in different locations, at different times, and for different purposes.  It follows that multiple different releases were signed by the Plaintiffs in connection with these Images.

21. Plaintiffs' claims depend on whether or not Plaintiffs released the rights to each Image at issue - in whole or in part - to whom said Image was released, and for what purpose.  In order to determine the extent to which each Plaintiff released the rights to a particular Image, the Court will need to evaluate the content of the contract and/or release each Plaintiff signed in connection with that Image.

22. Each of these distinct releases is likely to present a variety of different issues with respect to interpretation and validity.

23. In addition, depending on the language contained in each release, each of the photographers may have a property interest in the Image he or she captured, irrespective of whether each Plaintiff also retains some right to that Image.  This would require the joinder of these photographers in the lawsuit as necessary and indispensable parties.

24. Upon information and belief, Plaintiffs have released their rights to Images and have granted third parties permission to sell Images in advertising templates for the purpose of promoting nightclub events.  Some of the Images at

issue have been and/or are currently available for purchase from various promotional flyer-generating websites including, but not limited to, www.graphicriver.net, www.flyerheroes.com, www.partyflyer.com, and www.clubpsd.com. These websites sell hundreds of images and flyer templates that can be customized and used by nightclubs to promote their events.

25. Discovery from these companies will be necessary to determine whether or not they properly obtained the right to sell these Images, and, if so, how. The outcome of this determination may be different for each individual Plaintiff whose Image is being sold.

26. The Images at issue were purchased from these websites and/or otherwise obtained by different former Nightown employees at different times. Therefore, discovery from different former Nightown employees will be necessary to determine the original source of each Image and the methods by which each image was obtained.

27. Further, each Plaintiff asserts a claim of civil theft, which requires a showing of "felonious intent." (ECF No. 1). Therefore, each Plaintiff's claims will require a highly individualized inquiry into the circumstances under which each of several former Nightown employees and non-employees purchased or otherwise obtained each individual Image and the specific intent of each former employee and non-employee in utilizing each Image.

28.    Plaintiffs also assert that Nightown's unauthorized use of their Images has substantially injured their careers and their reputation in the modeling industry. Determination of these damages will necessarily require a highly individualized inquiry into the careers of each individual Plaintiff and her success in the modeling industry.

29.    As stated in the Complaint, Plaintiffs are engaged in several different genres of modeling.  For example, Plaintiff Voronina is primarily involved in print modeling and has acted as a spokesmodel for several brands, while Plaintiff Pepaj is involved in the fashion and runway modeling industries.  (ECF No. 1).  Many of the other Plaintiffs have modeled for adult magazines, including Playboy, FHM, and Maxim.  (ECF No. 1).  At least one Plaintiff, Sara Underwood, has actually been engaged by Nightown to promote an event, and received compensation for her appearance in Defendant's nightclub.  (ECF No. 1).

30.    Clearly, any alleged damage resulting from a model's association with Nightown would differ greatly between a fashion runway model, a Playboy model, and a model who had previously agreed to promote Nightown for compensation.

31.    Therefore, due to the highly individualized inquiry that will be necessary to determine each Plaintiff's damages, Plaintiffs cannot be permitted to join these claims together in one (1) lawsuit.

32. While trying multiple Plaintiffs' claims together in one (1) action can often be more efficient, the determination of these individual issues within a single action will significantly delay the process of moving each Plaintiff's claim through the judicial system.

33. For example, civil theft, pursuant to § 772.11, *Florida Statutes,* is one of the eleven (11) causes of action brought by each Plaintiff. To prevail in a claim of civil theft, a Plaintiff must prove by clear and convincing evidence, that (1) Nightown knowingly obtained property belonging to the Plaintiff; (2) with the intent to deprive that Plaintiff of her right to the property. A liability determination on this one (1) cause of action alone, with respect to one (1) Plaintiff, will raise the following fact questions:

   a. What is the content of the agreement and/or release signed by the Plaintiff in connection with the Image?
   b. Did the Plaintiff retain any property rights with respect to the Image, pursuant to the release signed in connection with that Image?
   c. Does a photographer and/or modeling agency have any property rights in that Image under said release?
   d. If so, must these third-parties be joined as necessary and indispensable parties in this action?
   e. How did Nightown obtain the Image? Was this Image purchased from a company purporting to own the rights to that Image? If so, does the company have a valid basis for that claim (i.e. did the

11

  Plaintiff or any other individual holding rights in the Image agree to assign those rights to said company)?

 f. Which Nightown employee created the advertisement using Plaintiff's Image?

 g. Did that employee have the requisite state of mind with respect to that particular Image, as required by the statute?

34. Each of these issues will be unique to each Plaintiff, and are wholly separate from the necessarily individualized issues that will arise with respect to damages.

35. While Nightown may be clearly liable as to one (1) Plaintiff, another Plaintiff may present a variety of issues that slow down the determination of the action as a whole. Therefore, each Plaintiff should have the ability to have her own causes of actions heard separately so that those Plaintiffs with less complicated fact issues associated with their action may move forward expeditiously and not be hindered by Plaintiffs that present a complex set of facts.

36. However, in the event that any truly common issues arise between the Plaintiffs' claims, those issues can and should be consolidated for the purposes of discovery. In fact, many courts acknowledge this fact upon granting a Motion to Sever. See *St. Tropez II, LLC v. Alderov,* 50.So.3d 40 (Fla. 3d DCA 2010) (holding that severance of Plaintiffs' claims was warranted, but acknowledging that Plaintiffs may still move for consolidation of any common issues); See also

Case No.: 3:16-cv-00073-MCR-EMT

*Fed. Ins. Co. v. Banyon 103032, LLC,* No. 8:10-CV-1422-T-33AEP, 2010 WL 3212119, at *1 (M.D. Fla. Aug. 12, 2010) (ordering consolidation of discovery in order to eliminate repetition or confusion).

37. Therefore, where multiple Plaintiffs with unrelated claims seek to join together in a single action under the guise of "judicial economy," a Court may sever those claims to avoid confusion and an otherwise unwieldy action, while still ensuring that the Plaintiffs will be able to avoid duplicative discovery by consolidating any common issues for the purposes of discovery.

38. Due to the highly individualized nature of the causes of action brought by Plaintiffs, Nightown could potentially be found liable for different causes of action for different Plaintiffs. If permitted to join their claims into a single lawsuit, it will be difficult for a jury to distinguish between the various causes of action and the various elements of proof. Additionally, there is significant risk that joinder of Plaintiffs' claims will confuse and improperly color the jury's perception of Defendant.

39. Conversely, severance of these claims poses no threat of inconsistent verdicts or prejudice to Plaintiffs. Each Plaintiff will have a full and fair opportunity to discover and present to the jury the unique circumstances underlying Nightown's alleged improper use of her Image.

Case No.: 3:16-cv-00073-MCR-EMT

WHEREFORE, and for the foregoing reasons, Nightown respectfully asks this Court to sever the improperly joined Plaintiffs in this action, and to order each Plaintiff to re-file a separate complaint.

The undersigned hereby certifies that this motion is 3,049 words in length and within the 8,000 words allowed by the Court.

          COLE, SCOTT & KISSANE, P.A.
*Counsel for Defendant*
*R&B AMUSEMENTS, INC.*
Cole, Scott & Kissane Building
715 South Palafox Street
Pensacola, Florida 32502
Telephone (850) 483-5900
Facsimile (850) 438-6969
Email: randall.rogers@csklegal.com
Email: scott.welner@csklegal.com

By:  s/ Scott J. Welner
     RANDALL G. ROGERS
     Florida Bar No.: 195626
     SCOTT J. WELNER
     Florida Bar No.: 498033

Case No.: 3:16-cv-00073-MCR-EMT

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this the 15th day of April, 2016, a true and correct copy of the foregoing was filed electronically with the Clerk of Courts using the CM/ECF System which will send notice of electronic filing to the following counsel of record:

Sarah M. Cabarcas, Esq.
*The Casas Law Firm, P.C.*
Brickell Bayview Center
80 S.W. 8th Street, Suite 2000
Miami, FL 33130
Email: sarah@casaslawfirm.com
*Counsel for Plaintiff*

Joseph N. Casas, Esq.
*The Casas Law Firm, P.C.*
402 West Broadway, Suite 400
San Diego, CA 92101
Email: joseph@casaslawfirm.com
*Counsel for Plaintiff*

By: */s/ Scott J. Welner*
SCOTT J. WELNER